## CHARLES B. CLISBY, USE, ETC., *v.* MOBILE & OHIO RAILROAD COMPANY.*

1. PRACTICE. *Trial. Argument. Diagram.*

   Attorneys may, without impropriety, exhibit in argument to the jury a diagram of an object described by the witnesses, although the same has not been offered in evidence.

2. RAILROADS. *Speed in municipalities. Code 1892, §3546. Laws 1896, p. 76. Construction. Legislative approval.*

   The act of 1896 (laws 1896, p. 76) amending code 1892, § 3546, in respect to the speed of railroad trains within municipalities, simply abolished the previously existing statutory penalty and gave legislative approval to the judicial construction theretofore placed on the code section.

3. SAME. *Proximate cause.*

   The provisions of code 1892, § 3546, as amended laws 1896, p. 76, making railroads liable for damages inflicted by running trains over six miles per hour within the limits of a municipality, does not render a railroad company liable for such damage where the speed is not the proximate cause of the injury.

4. SAME. *Safest appliances.*

   A railroad company is not required to provide the safest and best known appliances. It may provide those in common use, of approved pattern, and in reasonably good repair.

5. INSTRUCTIONS.

   An appellant cannot complain of error in an instruction given at his instance; nor of a conflict in instructions produced by an erroneous one so given; nor of an instruction more favorable to him than the law warranted.

---

* Judge Calhoon having been of counsel, recused himself in this case; George J. Leftwich, Esq., was appointed and acted as special judge in his place.

FROM the circuit court of Clay county.

HON. CHARLES H. CAMPBELL, Special Judge.

Clisby, who sued for the use of the Home Insurance Company, the appellant, was the plaintiff in the court below; the railroad company was defendant there. The facts are stated in the opinion of the court.

*Green & Green,* for appellant.

In view of the conflict of the evidence on the most material issues in the case, it was essential there should be no errors of law in the instructions to the jury. *Chapman* v. *Copeland,* 55 Miss., 476. This was not only not done, but the instructions themselves are in hopeless conflict.

By the third instruction for the plaintiff the jury was told that, if the cotton was set on fire by sparks from defendant's locomotive while running within the corporate limits at a greater rate of speed than six miles an hour, and in generating and maintaining that speed, then, this was negligence and the jury should find for the plaintiff. This instruction was in strict accord with *Railway Co.* v. *Carter,* 77 Miss., 516; *Jones* v. *Railroad Co.,* 75 Miss., 970; *Crawley* v. *Railroad Co.,* 70 Miss., 340; *Insurance Co.* v. *Railroad Co.,* 70 Miss., 119; *Railroad Co.* v. *McGowan,* 62 Miss., 697; *Railroad Co.* v. *Jordan,* 63 Miss., 460; *Railroad Company* v. *Toulme,* 59 Miss., 284; code of 1892, § 3546; acts of 1896, p. 76, whereby it is declared, "and the company shall be liable for any damages or injury which may be sustained by any one from such locomotive or cars whilst they are running at a greater rate of speed than six miles an hour."

The defendant's second, third, fifth, sixth, seventh and ninth instructions were in direct conflict with plaintiff's third one, and the court thus left the jury to select which of the conflicting theories of the law it would adopt.

A railroad company is liable for a violation of a statute as *per se* negligence and without express liability being declared.

*Meyer* v. *King*, 72 Miss., 11; 1 Sher. & Red. on Neg., sec. 13, and note; *Knoff* v. *Railway Co.*, 20 A. & E. R. R. Cas., 175; 3 Elliott on Railroads, sec. 195; *Tobey* v. *Railroad Co.*, 94 Iowa., 258; *Graney* v. *Railroad Co.*, 149 Mo., 89; *Schelereth* v. *Railway Co.*, 101· Mo., 87; *Dallemand* v. *Saalfeldt*, 175 Ill., 815; *Railroad Co.* v. *Sampson*, 112 Ala., 435; *Railroad Co.* v. *Barnhardt*, 115 Ill., 399; *Sheehan* v. *Boston*, 171 Mass., 296; *Miller* v. *Ammon*, 145 U. S., 421; 15 Am. & Eng. Enc. L. (2d ed.), 941, 937.

That the statute embraces damage from fire from locomotives is settled. *Insurance Co.* v. *Railroad Co.*, 70 Miss., 139; *Tribette* v. *I. C. R. R. Co.*, 71 Miss., 212.

The fact that a high wind carried the sparks would not excuse. 2 Sher. & Red. on Neg., sec. 666, and cases; *Milwaukee* v. *Kellogg*, 94 U..S., 469; *Atkinson* v. *Goodrich*, 60 Wis., 141; Cooley on Torts, p. 77; Bishop on Con. Law, sec. 450; *Railroad Co.* v. *Stinson*, 74 Miss., 457.

To prevent escape of fire the company must use the "most approved safeguards." *Wiley* v. *Railroad Co.*, 44 N. J. L., 247. "The best mechanical contrivance in known, practical use." *Railway Co.* v. *Rogers*, 76 Va., 443.

The company was not only bound to use all due care and skill in the prevention of the mischief, but also are bound to avail themselves "of all the discoveries which science has put within reach, provided they are such as under the circumstances it is reasonable to require the company to adopt." *Spaulding* v. *Chicago*, 30 Wis., 110; *Dimmock* v. *Railway Co.*, 4 F. & F. (Iowa), 63; *Railroad Co.* v. *Nelson*, 51 Ind., 153; *Railroad Co.* v. *Hall*, 58 Ill., 409; *Railroad Co.* v. *Schultz*, 93 Pa. St., 341; *Railroad Co.* v. *Levi*, 13 Am. & Eng. R. R. Cas., 464.

*Critz, Beckett & Kimbrough; F. G. Barry* and *A. J. Russell*, for appellee.

There is no reason or law which creates a presumption from the burning of appellant's cotton that it was set on fire by the

appellee company. *Farquhar* v. *Alabama, etc., Ry. Co., ante,*
—; *Owens* v. *Illinois, etc., R. R. Co.,* 77 Miss., 142; *New
Orleans, etc., R. R. Co.* v. *Bourgeois,* 66 Miss., 3; *Mobile,
etc., R. R. Co.* v. *Holt,* 62 Miss., 170.

The appellee was not required by law to provide the very
best appliances, spark arresters, etc. *Kent* v. *Yazoo, etc., R.
R. Co.,* 77 Miss., 494; *Patton* v. *I. & P. Ry. Co.,* 179 U. S.,
664.

Even if the train was running at an unlawful rate of speed
this did not impose liability on the appellee unless there was
causal connection between the speed and the injury. *Bell* v.
*Alabama, etc., R. R. Co.,* 3 Am. & Eng. Ry. Cas. (N. S.),
448, s. c. 19 So. Rep., 316, s. c. 108 Ala., 286; *Farquhar* v. *Ala-
bama, etc., Ry. Co.,* supra; *Collins* v. *Illinois, etc., R. R. Co.,*
77 Miss., 855; *Alabama, etc., Ry. Co.* v. *Carter,* 77 Miss.,
511; *Jones* v. *Illinois, etc., R. R. Co.,* 75 Miss., 970; *Howell*
v. *Illinois, etc., R. R. Co.,* 75 Miss., 242.

The use of the diagram by counsel, for appellee, in his argu-
ment to the jury, was not improper; certainly was within the
discretion of the court below. *Hill* v. *Waterworks,* 77 Hun.
(N. Y.), 493; *Battishill* v. *Humphreys,* 64 Mich., 513.

Argued orally by *Marcellus Green,* for appellant, and by
*R. C. Beckett* and *A. J. Russell,* for appellee.

LEFTWICH, Special J., delivered the opinion of the court.

This was an action by C. B. Clisby for the use of the Home In-
surance Company against the Mobile & Ohio Railroad Company
to recover the value of 472 bales of cotton destroyed by fire
March 6, 1899, in the sheds and grounds of the compress com-
pany, situated within the corporate limits of West Point, Mis-
sissippi. The gist of plaintiff's action is stated in its amended
declaration as follows: "That on said day defendant so negli-
gently operated its locomotive passing along said tracks, and
when in close proximity to said baled cotton, as to emit therefrom

large, unusual, and dangerous sparks of fire, and said locomotive was, by defendant, then and there so negligently and improperly equipped with spark-arresting apparatus, and said spark-arresting apparatus was then and there so negligently out of repair as that it permitted large and unusual and dangerous sparks in large and unusual quantities to be emitted; and at the time of such emission of said sparks said defendant was negligently and unlawfully using its locomotive within the corporate limits of West Point, and at a greater rate of speed than six miles an hour, and in attaining and maintaining said unlawful rate of speed said large and dangerous sparks of fire in said large and unusual quantities were so negligently emitted from said locomotive that said sparks of fire, so negligently caused and permitted to be emitted from said locomotive, were carried by the high wind then blowing in and upon said cotton, and the same was thereby, and by the said negligence of defendant, set on fire, and the fire, there set out under the influence of the high wind then blowing, was carried from bale to bale, and the said cotton of said Clisby was then and there damaged and destroyed by said fire.'' To this declaration defendant pleaded the general issue, a trial was had, and a verdict rendered in behalf of the defendant railroad by the jury. Plaintiff's motion for a new trial being overruled, it appeals to this court.

The compress, where the cotton was burned, was situated at the junction of the Mobile & Ohio and Illinois Central railroads, defendant's track running near the compress platform on the west. A strong northwest wind was blowing at the time of the fire immediately across defendant's track and towards the compress, which was destroyed along with plaintiff's cotton. The fire was so sudden and fierce that one .of the employes of the compress company was burned up in the flames. Defendant's locomotive, No. 89, drawing a train of freight cars, passed north over its track about the time of the fire. There is a conflict as to its rate of speed while passing the point where the fire was first discovered, plaintiff's witnesses estimating it

at about fifteen miles an hour, while defendant's swore it was from about three to five miles.

There is evidence that defendant's train stopped at the Illinois Central crossing, about 467 feet south from where the cotton took fire, and also at the crossing of the Southern railroad, about 486 feet still further south.

The testimony of plaintiff tended to show that the fire caught from sparks emitted from defendant's locomotive, while, on the part of defendant, there was evidence rebutting this fact and some tending to prove that the cotton was ignited by parties seen smoking near the point when the fire broke out. There was much evidence pro and con as to whether the spark arrester used on the locomotive was of the best pattern, and it was asserted by plaintiff that it was not in good repair and was negligently operated at the time. It is sufficient for us to say that we have carefully read the voluminous record and there is found testimony therein to sustain a verdict either for plaintiff or defendant, and that rendered in behalf of defendant is abundantly supported and must end the cause, unless reversible error of law was committed by the court below.

It is assigned for error that the trial court permitted counsel for defendant to show to the jury in argument a diagram of a locomotive which had been minutely described in evidence in words. When objection was made to the use of this diagram the presiding judge instructed the jury that it was not evidence and refused to allow it to be carried into the jury room when they retired. The counsel using it disclaimed its being evidence. We cannot say this was error. A proper latitude must be granted counsel in arguing the cause, under the oversight and in the sound discretion of the trial court. The diagram was a pictorial illustration of what the witnesses had said on the stand. This is a day of illustrations, in recognition of the fact that the eye may often be a better medium of enlightening the mind than the ear. Counsel, within the record, should be allowed the best lawful means of bringing the jury

to a correct understanding of the cause.    In enforcing proper limits to their action, conduct and argument before the jury, the trial judge should be unrestrained within reasonable and just bounds.

It is asserted by appellant's counsel that there is grave conflict in the charges in various particulars, but in the main this criticism is directed to the issue raised by the alleged excessive rate of speed of the train while within an incorporated town or village.

Section 3546 of the code of 1892 is as follows: "Any railroad having the right of way may run locomotives and cars by steam through cities, towns and villages at the rate of six miles an hour and no more; and if, in passing through any city, town or village, a locomotive or car should be run at a greater rate of speed, the company shall pay $100, to be recovered by suit in the name of the city, town or village, and for its use; and the company shall be liable for any damages or injury which may be sustained by any one from such locomotive or cars whilst they are running at a greater speed than six miles an hour through any city, town or village."

This section was amended by chapter 63, acts 1896, as follows:

"SECTION 1. That § 3546 of the annotated code be so amended as to read as follows: Section 3546. *Not to run at a rate over six miles an hour in cities, etc.; damages, etc.*  Any railroad company having the right of way may run locomotives and cars by steam through cities, towns and villages at the rate of six miles an hour and no more; and the company shall be liable for any damages or injury which may be sustained by any one from such locomotive or cars whilst they are running at a greater speed than six miles an hour through any city, town or village.

"SEC. 2. That this act shall take effect and be in force from and after its passage."

It is plain that this amendment was only intended to abolish the

penalty of $100 provided for in the code. Its re-enactment, with the exception above indicated, without change of language, must be held indicative of legislative approval of the construction theretofore placed upon it by this court.

Appellant asked and was granted, among others, the following charges:

2. "The court instructs the jury for plaintiff that, if the jury believe from the evidence that the fire which destroyed the cotton mentioned in the declaration was set out by sparks from defendant's locomotive in its operation, and that Clisby owned said cotton, then the plaintiff is entitled to recover in this suit, unless the evidence establishes to their satisfaction these three propositions and each and all of them, viz.: (1) that the operator of the locomotive exercised that degree of care that an ordinarily prudent person, skilled in handling locomotives, would have exercised under the circumstances; and (2) that the locomotive was equipped with reasonably safe and suitable spark-arresting apparatus, and (3) that said spark-arresting apparatus was then properly adjusted and in proper repair.

3. "If the jury believe from the evidence that the cotton was set on fire by sparks from defendant's locomotive, and that the said sparks were so emitted while said locomotive was running within the corporate limits of the municipality of West Point at a greater rate of speed than six miles an hour, and in generating and maintaining that speed, then this would be negligence and the jury will find for plaintiff.

5. "If the jury believe from the evidence that in such close proximity to the cotton on the platform as that it was reasonably probable that sparks would be carried by the wind to the cotton and set it on fire, the locomotive of defendant was so negligently managed, or was in such negligently defective condition as to spark-arresting apparatus, as that sparks of unusual size and quantity were emitted from the locomotive, and were carried by the wind upon the cotton, and spread fire

among the cotton, and destroyed the cotton mentioned in the declaration, belonging to C. B. Clisby, then the jury will find for plaintiff.''

Appellee, defendant below, requested and was granted the following charges among others:

2. ''Even if the jury should believe from the evidence that the spark which started the fire originated from a locomotive of the defendant, the statute only makes it *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to the fire, liable to be rebutted by proof of such reasonable care and skill, and if the jury should believe from the evidence that the fire was set out from a locomotive of the defendant, nevertheless, if they should further believe from the evidence that the locomotive was properly constructed and in good order, with a reasonably safe and prompt spark arrester, and that the locomotive was handled with due care, and the spark arrester was in good condition, but on account of a high wind prevailing at the time, or other causes over which defendant had no control, a spark was accidentally blown or carried on to the cotton, and that it was accidentally set on fire, without any negligence or fault on the part of the defendant or those in charge of the locomotive and train, then the jury will find for the defendant.''

3. ''If the jury believe from the evidence that, after the Mobile & Ohio railroad was built the compress or yard at which the cotton was burned was established alongside its right of way and close to the railroad track, then those in charge of the compress and yard, and those who stored cotton there, are presumed to know that trains are expected to be run with regularity, and if there are any special risks, arising from no want of care in the proper equipment and management of the engines and trains, those risks are not chargeable to the railroad, but are incident to the situation, and the extra risk from accident must devolve on the owners and insurers of the cotton. There was no obligation on those in charge of the locomotive to shut

off steam, and while they must act in reference to circumstances so as to not create an unusual or unnecessary danger, still they are entitled to transact the business in the usual and necessary manner, and if the jury further believe from the evidence that those in charge of the locomotive from which the fire is claimed to have originated were operating it at the time in the usual and necessary manner, and there was no want of care in the proper equipment and management of the locomotive, they will find for defendant.

4. "If the jury believe from the evidence that the locomotive by which the fire is claimed to have been set was properly constructed and supplied with the approved appliances to prevent the escape of fire, which were in good repair at the time, and that the engineer and firemen were competent and ran the locomotive under a light head of steam, and were not running over six miles an hour and were not guilty of negligence, then the defendant had discharged its whole duty to the owners and insurers of the cotton and no recovery can be had, even though the fire was set out from the locomotive.

5. "If the jury believe from the evidence that the fire in controversy was actually set out by a locomotive of the defendant and that it was at the time within the corporate limits of the city of West Point, and was running more than six miles an hour, and while, if nothing more appeared, the plaintiff, under the law, would be entitled to recover, yet, if more does appear from the evidence and all the facts and circumstances in evidence before the jury, then they should take into consideration, in arriving at their verdict, all such facts and circumstances, and if, from all these, they believe that there was proper care in the proper and reasonable equipment and management of the locomotive, and that such excess of speed had nothing to do with the fire, and that the fire was in no way caused or contributed to by such excess of speed, they will find for the defendant on that issue.

6. "If the jury believe from the evidence that the cotton in

controversy was set on fire by the locomotive of the defendant, which was at the time running more than six miles an hour within the corporate limits of the city of West Point, but, if they further believe from the evidence that the faster a locomotive drawing a train runs the less liable it is to emit sparks or to set fire to contiguous objects, and that the locomotive in controversy was in fact less liable to throw out fire or sparks by reason of the fact that it was running more than six miles an hour, then they are authorized to disregard the rate of speed, and, if they further believe from the evidence that otherwise there was no want of care in the proper, usual and reasonable equipment or management of the locomotive, they are entitled to find for the defendant.

8. "The court instructs the jury for the defendant that, although you may believe from the evidence that the defendant ran its engines and trains past the property of the plaintiffs at the time the fire occurred at a rate of speed exceeding six miles per hour, yet unless you are satisfied from the evidence that the fire was caused by sparks from one of their engines or trains, you must return a verdict for defendant railroad."

Appellant, assuming that the rule of law which should govern this case touching the effect of the excessive rate of speed is correctly stated in its instruction No. 3, insists that charges 2, 3, 5, 6, 7, and 9, granted at appellee's request, are in conflict with it, and, therefore, the jury were without any guide in making up their verdict.

We are of the opinion that defendant's charges, as a whole, were correct, while appellant's charge, No. 3, is incorrect, standing alone—and it asked no other charge on the matter of excessive speed—because it leaves entirely out of view what has heretofore been held by this court, viz., that to be negligence as to the party suing, the excessive speed must be the proximate cause of the injury. *Railway* v. *Carter*, 77 Miss., 516; *Jones* v. *Railroad*, 75 Miss., 970; *Howell* v. *Railroad*, 75 Miss., 251; *Craw-*

*ley* v. *Railroad,* 70 Miss., 340; *Farquhar* v. *Railroad, ante,* 193, s.c. 28 S. R., 580; *Collins* v. *Railroad,* 77 Miss., 855.

The greatest injustice might follow from holding the excessive speed *per se* negligence, whether the proximate cause of the injury or not. Several of the expert witnesses in this case, for illustration, testified, and not without reason, that owing to the peculiar construction of locomotive engines, the faster a train runs the less liable it is to throw sparks. Were that view correct, it would be palpably unjust to hold defendant liable for that very conduct which was best calculated to prevent the injury complained of. Says Judge Terral, in *Farquhar* v. *Railroad,* supra: " The argument of counsel, logically followed, would lead to the conclusion that if the injury was inflicted upon an employe of the company while the locomotive was running through a city or incorporated town or village, at a rate of speed greater than six miles an hour, the company would be liable though the employe, wilfully and of his own wrong, and without any negligence of the company except that of running the locomotive at a greater speed than six miles an hour, should cast himself under the wheels of the locomotive and so be injured, a conclusion which would be manifestly absurd." A construction which would lead to the results above indicated could not have been in the legislative mind or purpose.

The jury having, in its verdict, followed the correct rule on the question of excessive speed as laid down by charges 4, 5, and 6 granted appellee, and plainly not being misled by charge 3 granted appellant, and as the result appears to us to be just and warranted by the evidence, we cannot disturb its finding. A party litigant cannot complain of an instruction more favorable than was due him. 2 Thompson on Trials, p. 1750; Thompson's Instructions to Juries, sec. 122.

It has been held that an appellant cannot complain of an erroneous instruction asked by him. *Insurance Co.* v. *Von Os,* 63 Miss., 431; *Wilson* v. *Zook,* 69 Miss., 694; 2

Thompson on Trials, p. 1750; *Flowers* v. *Helm*, 29 Mo., 324; *Carroll* v. *People*, 136 Ill., 456; *Williams* v. *Southern Pacific Railroad Co.*, 110 Cal., 457; *Reordon* v. *Missouri Pacific Railroad Co.*, 114 Mo., 384; *Lobdell* v. *Hall*, 3 Nev., 515.   So that we decide, where appellee's instructions, taken all together, state the correct rule, and where it is clear that the jury followed the correct rule and the result is manifestly right and warranted by the evidence, and where the only conflict was engendered by the erroneous instruction asked by and granted to. appellant, there is not reversible error.   Had the verdict been for plaintiff, and had defendant appealed from a judgment sustaining that verdict, a different case would then have been presented.

Appellant's counsel allege that the charges numbered two and three, among others granted defendant, were erroneous because they did not exclude the imputation of negligence arising from the excessive rate of speed, and cites as authority *Home Insurance Co.* v. *Railway Co.*, 70 Miss., 139.   In that case all the instructions left out of view the effect of the excessive rate of speed which was shown by the evidence.   Here other instructions granted defendant—notably those numbered four, five and six—distinctly told the jury that defendant was liable if the injury was caused by an excessive rate of speed.   It has never been the law of this state that every instruction must present every view of the case and exclude every exception, limitation and condition.   It must be inferred that juries are composed of men of reason and intelligence, as the law requires they should be.   *Railroad* v. *Field*, 46 Miss., 573; *Nelson* v. *State*, 61 Miss., 212; *Skates* v. *State*, 64 Miss., 644; Sackett's Instructions to Juries, secs. 21, 22.

We do not think appellant is entitled to invoke a rule requiring better mechanical contrivances or the use of more skill and care in the selection and management of its servants and in the prevention of mischief, than is laid down in the second instruction granted at its own request.   The prevailing rule in this

state is therein fairly stated. *Kent* v. *Railroad*, 77 Miss., 494.

The locomotive and spark arrester in use by defendant and complained of by appellant were proven to be those in common use, of approved pattern and in reasonably good repair. This is all the law requires.

Appellant's counsel complain that the engineer and firemen, who were both on the stand as witnesses, were not proven to have been competent. We are of the opinion that the engineer by his own evidence established his competency. As to that of the firemen, there is no evidence one way or the other. But, be that as it may, the competency of neither is assailed by appellant in its declaration or in the evidence.

On the whole we see no reversible error in the judgment of the lower court, and it is

*Affirmed.*