MOBILE & OHIO R. R. Co. *v.* WILLIAM R. HOLLIDAY.

1. RAILROADS. *Dogs. Liability for killing on track.*

A railroad company whose train killed a stray dog on its track, in an open prairie, three-quarters of a mile from a station, is not liable therefor to the owner of the dog where the animal was not seen by the engineer, who was engaged in looking after his machinery, nor by the fireman, who was attending to the fire.

2. SAME. *Presumption of value.*

There is no presumption of the value of dogs, especially of stray dogs, as there is of other classes of animals.

FROM the circuit court of Monroe county.
HON. EUGENE O. SYKES, Judge.

Holliday, the appellee, was the plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in plaintiff's favor, the defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*Charles M. Wright,* for appellant.

A dog is an animal that rarely attracts the attention of persons, while, on the other hand, such an animal as a horse or a cow is almost sure to do so. There are a thousand cows and horses killed on railroad tracks where one dog is killed. Engineers know this, and hence they rely upon a dog to take care of itself, and do not pay the same strict attention to them that they do to ordinary domestic animals. This is reasonable care exercised by them, and all reasonable men and all reasonable engineers would do likewise. Reasonable care is only such care as ordinarily prudent men usually exercise in their every-day vocations. What is reasonable care as to a dog must not be reasonable care as to a horse or a cow, or other domestic animals. *Jones* v. *Bonds,* 40 Fed. Rep., 281.

In the case at bar the testimony shows that engineer Tatum kept a lookout whenever it was possible for him to do so, consistent with his other duties required in properly operating his engine; that these duties were necessary to be discharged to secure the proper operation of his engine, which he was required to properly operate under the law and under his instruction from his superior officers. The engineer testified that he did not see the dog; that he was in the discharge of his duties; that he could not have seen the dog while discharging his duties; that these duties are necessary in properly operating his engine. This testimony is uncontradicted, and entitled defendant to a judgment.

*E. O. Sykes, Jr.,* on the same side.

The court below erred in refusing the peremptory instruction asked by appellant. *Howard* v. *Louisville, etc., Ry. Co.,* 67

Miss., 247.   Reasonable care is all that was required of the railroad company or its employees, and such care was duly exercised in the instance involved.   The nature of dogs, the circumstances and surroundings, all contribute to establish that the engineer did his full duty.   *Jennison* v. *Railway*, 75 Ga., 444.

*Baxter McFarland*, for appellee.

The killing of appellee's dog was manifestly the direct result of a flagrant disregard by appellant's employees of an imperative duty.   The idea that railroad companies are absolved by the law from all duty to keep a lookout for three-fourths of a mile after starting their trains from their numberless stations, where animals and dangers are thickest, because engineers and firemen are under a paramount duty to keep attention fixed upon work about the engines—virtually what is here claimed—is a *non sequiter*, as well as monstrous.   In that case it would be the duty of the companies to have some one who could keep a lookout; not that the companies would be absolved.   The duty to so use their own as not to injure others would require this.   If the primary duty of the engineers and firemen is, as contended, the paramount duty to the public would bind them to this much.   It is, therefore, no excuse that these employees were too much occupied with these so-called "primary duties" to keep a lookout and see the dog; for that is what the contention virtually amounts to, since they obviously could have seen the dog had they tried.   In killing him they were guilty of the grossest negligence.   That the owners of dogs can recover of railroads for negligently killing them, has already been decided by this court.   *Jones* v. *Illinois, etc., R. R. Co.*, 75 Miss., 970.

CALHOON, J., delivered the opinion of the court.

Appellee's dog had strayed from home, and was in an open prairie in the country, about three-quarters of a mile from ap-

pellant's station, Prairie, on its track, and was killed by its locomotive, which was pulling a freight train.   One witness, who saw the killing, says the dog ran about five hundred yards in front of the train before it was run over, while another eye-witness puts the distance about one hundred and fifty yards. There is no dispute that the dog could have gotten off the track any moment.   The engineer testified that the train stopped at Prairie station for water; that he had to go up grade from there, and, when starting, he had to see to his lubricators, and other matters pertaining to his machinery, which took ordinarily three or four minutes, or about a mile's progress, during which his fireman was attending to the fire; and that he never saw the dog.   The railroad company asked a peremptory instruction, and the court refused to give it.   We think that this court, on the liability of railroad companies for killing dogs, went to the farthest limit in *Jones* v. *Railroad Co.*, 75 Miss., 970 (23 So. Rep., 358).   In that case it was determined that dogs were property, and that if killed within the limits of a municipal corporation by a train while violating code, § 3546, by running at a greater rate of speed than six miles an hour, liability was incurred, unless the killing would have occurred even if the speed had been at a rate not exceeding six miles an hour.   We cannot hold a railroad company liable for running over a stray dog under the facts in this record.   This is the most intelligent of the inferior animals—alert, agile, quick—and might well be supposed to avoid such danger, which cannot be said of horses, mules, horned cattle, or hogs.   Besides, there can be no presumption of value, as in case of other classes of animals.   The overwhelming majority of dogs have no pecuniary or market value.   Especially is this true of wandering, stray dogs, and we cannot take the view that they should be permitted to delay movements along the arteries of commerce.   Of course, these observations do not apply where a dog was purposely run down, or where he was seen in such a cut as prevented escape, or where the dog was seen and the negligence was so gross as

to be tantamount to design. In support of our views, we cite *Jemison* v. *Railroad Co.*, 75 Ga., 446 (58 Am. Rep., 476); *Wilson* v. *Railroad Co.*, 10 Rich. on Law, 52; *Jones* v. *Bond* (C. C.), 40 Fed. Rep., 282. By examining *Railway Co.* v. *Stanfield* (Ark.) 40 S. W., 126 (37 L. R. A.), 659, and notes, the curious may get all they want on either side. While the learned circuit judge might well sustain his action by decisions, we prefer the line of authorities in consonance with the foregoing conclusions, and think the peremptory charge for defendant should have been given.

*Reversed and remanded.*